**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No.: 0:19-cv-60126 |
| ) | |
| FEROL SAINT-JEAN also known as ) | |
| DAVID SAINT-JEAN, and DSJ TAX & ) | |
| MULTI SERVICES INC., ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR PERMANENT INJUNCTION**

The United States of America, by and through undersigned counsel, complains and alleges as follows:

1. Plaintiff, the United States, brings this action to permanently enjoin Defendants Ferol Saint-Jean, also known as David Saint-Jean ("Saint-Jean"), and DSJ Tax and Multi Services Inc. ("DSJ Tax") (collectively, the "Defendants") from:

   a. Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents and forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

   b. Using, maintaining, renewing, obtaining, transferring, selling, or assigning any Preparer Tax Identification Number ("PTIN") or Electronic Filing Identification Number ("EFIN");

   c. Owning, managing, working for, profiting from, or volunteering for any individual, business, or entity engaged in tax return preparation;

17240527.4

  d. Transferring, selling, or assigning their customer lists and/or other customer information;

  e. Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and/or 6701; and

  f. Engaging in conduct that substantially interferes with the proper administration and enforcement of tax laws.

## JURISDICTION AND VENUE

2. This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, and is commenced at the direction of the Attorney General of the United States in accordance with 26 U.S.C. §§ 7407 and 7408.

3. This Court has jurisdiction pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340 and 1345.

4. Venue is proper in this Court, pursuant to 26 U.S.C. §§ 7407(a), 7408(a), and 28 U.S.C. § 1391, because Saint-Jean prepares taxes in and DSJ Tax is located in Broward County, Florida, which is within this judicial district and the events giving rise to this claim occurred within this judicial district.

## DEFENDANTS

5. Saint-Jean has prepared tax returns since 2002 and has operated DSJ Tax since 2006. He resides in Coral Springs, FL and operates DSJ Tax in Lauderhill, FL. Saint-Jean obtained a PTIN from the IRS that he uses to identify himself on returns he prepares for customers.

6. Saint-Jean has no formal training in tax return preparation. He worked briefly at H&R Block in 2002, attends IRS tax forums, and participates in online training provided by his software provider, TaxWise.

7. DSJ Tax is located at 2311 N. State Road 7, Ste. 111, Lauderhill, FL 33313 and is Saint-Jean's business. The business was incorporated by Saint-Jean in 2006, and, according to state records, is an active corporation in good standing. DSJ Tax obtained an EFIN that it uses to electronically file returns for customers. It employs several other return preparers, but Saint-Jean is the President, CEO, and registered agent. All of DSJ Tax's gross receipts are generated from income tax preparation fees.

8. Each DSJ Tax preparer uses his or her own PTIN, but tax returns prepared in the office are e-filed using the EFIN assigned to DSJ Tax.

## DEFENDANTS' ACTIVITIES

9. Saint-Jean and other DSJ Tax preparers prepare and file hundreds of returns each filing season. From 2011 to 2018, they filed approximately 4,364 individual tax returns. In 2017 and 2018, DSJ Tax prepared 461 and 414 individual tax returns respectively. Of those returns, more than half – 249 in 2018 and 229 in 2017 – were personally prepared by Saint Jean. Saint-Jean's conduct in preparing returns is attributable to DSJ Tax, which can only act through Saint-Jean and the other preparers it employs. Both Saint-Jean and DSJ Tax are "tax return preparers" as defined by 26 U.S.C. § 7701(a)(36).

10. Saint-Jean charges a flat fee of $75 for income tax preparation. Additional fees are charged based on the number of forms and schedules completed as well as the number of dependents. Saint-Jean generally allows the preparers that work for DSJ to charge what they

want, but that the amount has to be less than $500 to keep it within the guidelines set forth by his bank product – Santa Barbara Tax Products Group.

11.     In 2015, the IRS began investigating Saint-Jean and DSJ Tax and selected thirty (30) returns prepared by Saint-Jean and DSJ Tax for examination.  A review of those returns showed that Saint-Jean and DSJ Tax prepared returns that claim false education credits and overstated Earned Income Tax Credits ("EITC").

12.     The EITC is a benefit for working taxpayers with low to moderate income.  The amount of EITC for which taxpayers may qualify depends upon several factors including the taxpayer's filing status, number of dependents, and amount of "earned income."  The amount of the EITC increases in relation to the taxpayer's "earned income" to a certain threshold, over which the taxpayer becomes ineligible to claim the credit.

13.     One way unscrupulous return preparers manipulate earned income is by reporting fictitious earned income or fabricating losses to bring their customers' earned income into the "sweet spot" in order to claim a larger EITC than the customer is entitled to receive.  Defendants manipulate the earned income they report on returns for customers by reporting false household help income, fabricating Schedule A deductions, and falsifying items on Schedule C – Profit or Loss from Business.  Indeed, IRS data of returns that Defendants prepared during the last two years show a high-percentage of returns that claim the EITC.  Specifically, for tax year 2017, DSJ Tax prepared 461 returns and over half of those returns – 250 returns – claim the EITC.  Similarly, for tax year 2016, DSJ Tax prepared 414 returns and over half of those returns – 250 returns – claimed the EITC.

14.     Because of concerns regarding fraud in claiming the EITC, Congress has required that tax preparers comply with certain due diligence requirements prescribed by regulations

17240527.4

issued by the Department of Treasury when the EITC is claimed on a return.  26 C.F.R. § 1.6695-2(b) requires that preparers claiming the EITC: (i) complete and submit Form 8867; (ii) complete all necessary worksheets showing how the credit was computed; (iii) make reasonable inquiries regarding the information necessary to claim the credit and may not ignore implications that the information provided is incorrect; and (iv) retain records of the information, documents, forms, and worksheets used to compute the credit.  If tax preparers fail to exercise adequate due diligence when claiming the EITC, they may be subject to penalties.

15.     The IRS conducted an EITC due diligence examination of Saint-Jean to determine whether he was complying with these requirements for tax year 2010.  The investigation revealed that he did not maintain appropriate records regarding customers who claimed the EITC for tax year 2010, and a due diligence penalty was assessed against Saint-Jean for that failure.

16.     Despite the penalty assessment, Saint-Jean (and by extension DSJ Tax) continued to claim improper EITCs on returns he prepared.  Interviews by IRS agents of customers of DSJ Tax confirm that Saint-Jean and DSJ Tax engage in several abusive schemes and that Defendants knowingly misreport information on their customers' returns.

17.     Defendants' signature scheme is artificially raising or lowering the "earned income" claimed on their customers' returns to maximize the amount the EITC claimed without crossing the EITC income threshold.

18.     Examples of this scheme are described below. To protect the identities of individual customers, the Complaint refers to each customer by number, *e.g.*, Customer 1, etc.  A Customer Key, which identifies each customer by name and social security number will be served with the Summons and Complaint.

a. <u>Fabricating Schedule C Losses</u>:  For tax year 2015, Customer 1 claimed a Schedule C loss of $25,494.  A Schedule C is used to report profits or losses from a business that a taxpayer operated as a sole proprietor.  When interviewed by the IRS in December 2016, Customer 1 reported that he did not have a business and did not know why the loss was claimed on his return.  The return for Customer 1 was prepared by an employee of DSJ Tax.  On the Form 8867 Paid Preparer's Due Diligence Checklist for Customer 1, the preparer noted that Customer 1 provided a business license as proof of his Schedule C business.  Customer 1 did not produce such a license because he did not have a business.  The tax preparer fabricated the Schedule C loss on the return without Customer 1's knowledge and also falsely claimed that she received a copy of a business license as part of the Form 8867 Paid Preparer's Due Diligence Checklist in order to hide her manipulation from the IRS.  The fabricated losses resulted in a refundable EITC of $4,785 to which Customer 1 was not entitled.

b. <u>Lack of Due Diligence and Fabricating Income</u>: Customer 2's 2015 return was personally prepared by Saint-Jean.  Customer 2 operated a hair and jewelry business for which Saint-Jean prepared a Schedule C.  However, Saint-Jean failed to exercise any due diligence to determine the amount of gross-receipts Customer 2 earned from her business.  Worse, in order to report enough earned income to claim the maximum EITC, Saint-Jean fabricated $1000 in household help income on Customer 2's 2015 return.  Customer 2 did not have any income outside of her Schedule C business and did not report that she did to Saint-Jean.  Because of

        Saint-Jean's manipulation of Customer 2's income, she received an extra $1,415 in EITC to which she was not entitled.

    c. <u>Fabricating Income</u>: Customer 3 only worked as a W-2 wage earner and did not have any other income. However, Saint-Jean reported $8,400 in tip income on her 2013 return. Customer 3 reported that she did not know why Saint-Jean included this information on her return and that she did not discuss having any other jobs with him. By fabricating additional income for Customer 3, Saint-Jean enabled Customer 3 to claim the maximum refundable EITC of $5,372 for that year. Conversely, for tax year 2014, Customer 3's return reported $6,067 in expenses for a non-existent laundry business to fabricate a loss that reduced the amount of earned income that Saint-Jean reported. Again, Customer 3 informed the IRS that she never had a sole proprietorship and did not know why Saint-Jean included that information on her return. By claiming a fictitious loss, Saint-Jean increased the EITC that Customer 3 claimed for 2014 by $695.

19. These examples may be just a small sample of the times that Saint Jean and DSJ Tax fraudulently reported business losses or income. In tax year 2017, 151 of the 461 returns prepared by Saint-Jean and DSJ Tax included a Schedule C "business," with 63 of those customers claiming losses that – on average – exceeded $10,000.

20. Another of Saint Jean and DSJ Tax's abusive schemes is claiming false education credits for customers who did not incur any education expenses. For example:

    a. Customer 4's 2013 tax return claimed a $1,500 American Opportunity and Lifetime Learning credit ("AOC"). Although Customer 4's son attended college in 2013, he received financial aid that covered his educational expenses.

    Customer 4 did not discuss his son's college attendance with the tax preparer and did not provide a Form 1098-T or any other documentation to support the credit that DSJ's prepared claimed. The preparer added the credit without Customer 4's knowledge or consent.

  b. Customer 5's 2013 tax return claimed a $1,500 AOC. Customer 5's 2013 return does not list the educational institution that she purportedly attended, while Customer 5's 2014 tax return claimed a $1,168 AOC for purportedly attending "Nelnet Loan." Customer 5 did not tell the tax preparer that she attended an educational institution in 2013 or 2014, and confirmed to the IRS that the claims were false.

  c. Preparer 1 is a preparer at DSJ Tax who filed his personal tax return for tax year 2014 using DSJ Tax's EFIN. On that return, he reported that he was entitled to a $1,500 AOC for his attendance at "One Stop Healt [sic] Training Center." Preparer 1 indicated on his return that he did not have a Form 1098-T from his educational institution but that he attended at least half time for at least one academic period. His return was selected for audit by the IRS. As part of the audit process, the IRS learned that Preparer 1 had never attended an educational institution in 2014. Preparer 1 knew that he had not attended an educational institution in 2014 and yet still falsely claimed that he had.

21. Saint-Jean and DSJ Tax's fraudulent conduct in claiming the education credit for their customers may not be limited to just these examples. Saint-Jean and DSJ tax reported that 42 of their customers were entitled to education credits in 2017, but did not report that Form 1098-T, or Tuition Statement, existed for any of the 42 customers who claimed an education credit.

22. Finally, Saint-Jean and DSJ Tax also understate the tax their customers report and – consequently – the refunds claimed on their returns by claiming expenses, charitable deductions and other improper deductions on Schedule A. For example:

　　a. Customer 6's 2015 tax return reported a deduction on Schedule for $2,000 for general sales tax. The customer did not purchase a vehicle or any other expensive item to claim the $2,000 deduction. Customer 6 did not ask the preparer to include the sales tax deduction. There was also a deduction on Schedule A for $23,267 in unreimbursed employee expenses. The only expenses that Customer 6 informed the tax preparer about were chef knives, a chef jacket, traveling between locations, use of a cell phone, and car repairs. Customer 6 had no records to support any of his expenses and does not know how much he actually spent on any of the items that he purchased. Customer 6 stated that the tax preparer estimated all of the expenses for him. The tax preparer failed to conduct adequate due diligence of Customer 6's expenses and fraudulently inflated Customer 6's state sales tax and expenses.

　　b. Customer 7's 2015 tax return reported a general sales tax deduction of $3,500 on Schedule A. Customer 7 stated that he was not aware of the deduction, that he did not purchase a vehicle or any expensive item, and that he did not discuss the deduction with the preparer. Customer 7's 2015 tax return also included mortgage interest of $19,710. Mortgage interest was deducted again on Schedule E for $10,817. Also included were $3,405 in mortgage insurance premiums, which are not deductible. Customer 7's return also included deductions for unreimbursed employee expenses. Customer 7 reported to the IRS that he did not

keep a mileage log, did not provide receipts from travel, and did not provide receipts from uniform purchases. Customer 7 stated that he did not know how the tax preparer came up with the amounts claimed and that he was not present when his return was prepared. Customer 7's Itemized deductions appear overstated by $39,609 and the sales tax appears overstated by $2,593. By falsely increasing the value of the items claimed on Schedule A in ways not discussed with or requested by Customer 7, the tax preparer received a greater refund, to which he was not entitled.

c.  Customer 8's 2013 and 2014 tax returns reported cash contributions on Schedule A in the amount of $3,854 and $3,754 respectively. Customer 8 stated that he and his wife did not provide any records nor have any discussions with Saint-Jean regarding cash contributions. Customer 8 also had miscellaneous expenses on their 2013 return of $17,856 and on their 2014 return of $17,856. Customer 8 reported that he had informed Saint-Jean that he had a personal loan for a boat and that Saint-Jean had deducted 10 (ten) percent for interest. Customer 8 also reported that Saint-Jean suggested that he could deduct expenses for clothing and then provided an estimate for that personal expense. Customer 8 stated that Saint-Jean also asked Customer 8 about his rent and then deducted that amount as a miscellaneous expense. Customer 8 reported that he was unaware that these expenses were not deductible. By fabricating cash contributions and including expenses that are not deductible, Saint-Jean fraudulently increased the refund received by Customer 8.

17240527.4

d. Customer 9's 2013 tax return reported $3,008 in gifts to charity on Schedule A. His 2014 tax return reported $1,800 in gifts to charity on Schedule A. Customer 9's total income in 2013 was $23,412 and in 2014 was $22,773. Customer 9 informed the IRS that he did not make the reported charitable contributions, that he did not provide any records suggesting that he did to the tax preparer, and that he did not have any discussions with the preparer regarding charitable contributions. Customer 9 also claimed $15,343 in unreimbursed employee expenses in 2013 and $16,140 in unreimbursed employee expenses in 2014. Customer 9 stated that he did provide the tax preparer with gas receipts and car expenses, but that he did not separate personal expenses from employee expenses. Customer 9 further stated that the tax preparer came up with numbers for dry-cleaning, shoes, and cellphone expenses without receipts from him. By fabricating gifts to charity and including expenses that are not deductible, the preparer fraudulently increased the refund received by Customer 9.

e. Customer 4, discussed above, also had cash contributions claimed on his 2013 and 2014 tax returns in the amounts of $3,628 and $3,215 respectively. Customer 4 stated that he did not make any cash contributions and did not discuss any with the tax preparer. His 2013 and 2014 returns also claimed unreimbursed employee expenses on Schedule A in the amounts of $15,073 and $13,321. Customer 4 stated that he was asked whether he had job expenses and replied that he had to buy tools, but that no receipts were requested and that he never discussed the amounts that he spent on tools. He also didn't recall discussing mileage or

utilities. By fabricating cash contributions and including expenses that are not deductible, the preparer fraudulently increased the refund received by Customer 4.

23. Saint-Jean and DSJ Tax's fraudulent conduct in claiming these deductions and expense may not be limited to just these examples. For tax year 2017, 92 returns claimed Schedule A deductions outside of state and local income tax and 56 returns claimed unreimbursed employee expenses.

24. The time to file 2018 federal income tax returns is scheduled to start on January 29, 2019 and end on April 17, 2019. Although Defendants have yet to file any returns for the 2018 tax year, Defendants' conduct in previous years strongly suggests that they will continue to prepare and file returns for customers that understate the tax that those customers owe and/or overstate the refunds that they claim.

## HARM TO THE UNITED STATES

25. Saint-Jean and DSJ Tax's pattern of preparing returns that understate customers' taxes and/or overstate their refunds or credits, through the schemes described above, has resulted in the loss of federal tax revenue.

26. In many instances, Saint-Jean and DSJ Tax's fraudulent overstatement of their customers' refunds and credits caused the United States to issue refunds that the customers were not entitled to receive.

27. Based on the returns that it has examined, the IRS estimates that the United States has lost hundreds of thousands of dollars in tax revenue from Defendants' consistent understatement of liabilities/overstatement of refunds. In addition, the United States has had to bear the substantial cost of examining the returns Defendants have prepared and collecting the understated liabilities from their customers.

17240527.4

28. In addition to the direct harm caused by preparing tax returns that fraudulently understate customers' tax liabilities and/or overstate their refunds, Defendants' activities encourage noncompliance by the customers with internal revenue laws by preparing returns that did not honestly and accurately reflect the information the customers provided.

29. Similarly, Defendants' fraudulent use of the Earned Income Tax Credit undermines public confidence in a statutory credit meant to encourage low-income workers with young children to maintain employment.

**COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 and 6695**

30. The United States incorporates by reference the allegation in paragraphs 1 through 29.

31. Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a person who is a tax return preparer from engaging in certain conduct or from further acting as a tax return preparer.  The prohibited conduct justifying an injunction includes, *inter alia*, the following:

   a. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund or credit due to an unreasonable position that the preparer knew or should have known was unreasonable;

   b. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund or credit due to willful or reckless conduct;

    c. Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a tax return preparer who does not exercise due diligence in determining eligibility for earned income tax credits and for American opportunity tax credits and/or child tax credits; and

    a. Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

32. In order for a court to issue such an injunction, the court must find that:

    a. The tax return preparer engaged in the prohibited conduct; and

    b. Injunctive relief is appropriate to prevent the reoccurrence of such conduct.

33. If a tax return preparer's conduct is continual or repeated and the court finds that a narrower injunction would not be sufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court may permanently enjoin the person from acting as a tax return preparer. *See* 26 U.S.C. § 7407(b).

34. Saint-Jean and DSJ Tax have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing returns that understate their customers' tax liabilities and overstate their refunds and credits. As described above, Saint-Jean and DSJ Tax prepared returns for customers that claim deductions for expenses that were not incurred by the customers and credits to which the customers were not entitled. Saint-Jean and DSJ Tax have done so with the knowledge that the positions they took on returns were unreasonable and lacked substantial authority. Saint-Jean and DSJ Tax thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

35. Additionally, Saint-Jean and DSJ Tax have engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully understating customers' liabilities, overstating their refunds and credits, and acting with a reckless and intentional disregard of rules and regulations.

36. Saint-Jean and DSJ Tax have also engaged in conduct subject to penalty under 26 U.S.C. § 6695(g) by repeatedly failing to exercise due diligence in determining the eligibility of their customers to claim the EITC.

37. Saint-Jean and DSJ Tax's conduct substantially interferes with the administration of the internal revenue laws.  Injunctive relief is necessary to prevent this misconduct because, absent an injunction, Saint-Jean and DSJ Tax are likely to continue preparing false federal income tax returns.

38. A narrower injunction would be insufficient to prevent Saint-Jean and DSJ Tax's interference with the administration of the internal revenue laws.  Saint-Jean and DSJ Tax prepare returns understating their customers' liabilities and overstating their refunds and credits through multiple schemes that report false information on their customers' tax returns. In addition, the IRS may not yet have identified all of the schemes used by Saint-Jean and DSJ Tax to understate liabilities and overstate refunds and credits. Failure to permanently enjoin Saint-Jean and DSJ Tax will require the IRS to spend additional resources to uncover all of the future schemes. The harm resulting from these schemes includes both the expenditure of these resources and the revenue loss caused by the improper deductions and credits Saint-Jean and DSJ Tax claim on returns they prepare.  Accordingly, only a permanent injunction is sufficient to prevent future harm. Saint-Jean and DSJ Tax should be permanently enjoined from acting as a tax return preparer.

## COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701

39. The United States incorporates by reference the allegations contained in paragraphs 1 through 29.

40. Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701, which penalizes a person who aids or assists in the preparation of tax returns that the person knows will result in an understatement of tax liability.

41. Saint-Jean and DSJ Tax have engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns that claim credits and deductions that they knew to be improper, false, and/or inflated.

42. Saint-Jean and DSJ Tax's repeated actions fall within 26 U.S.C. § 7408, and injunctive relief is appropriate to prevent reoccurrence of this conduct.

## COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL INTERFERENCE WITH THE ENFORCEMENT OF INTERNAL REVENUE LAWS

43. The United States incorporates by reference the allegations contained in paragraphs 1 through 29.

44. Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

45. Saint-Jean and DSJ Tax have repeatedly and continually engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

46. If Saint-Jean and DSJ Tax continue to act as a tax return preparer, their conduct will result in irreparable harm to the United States, and the United States has no adequate remedy at law.

47. Saint-Jean and DSJ Tax's conduct has caused and will continue to cause tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. Moreover, unless Saint-Jean and DSJ Tax are enjoined from preparing returns, the IRS will have to devote substantial and unrecoverable time and resources auditing her customers individually to detect understated liabilities and overstated refund and credit claims.

48. The detection and audit of erroneous tax credits and deductions claimed on returns prepared by Saint-Jean and DSJ Tax would be a significant burden on IRS resources.

WHEREFORE, Plaintiff, the United States of America, respectfully prays for the following:

A. That the Court find that Saint-Jean and DSJ Tax have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

B. That the Court find that Saint-Jean and DSJ Tax have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C. That the Court find that Saint-Jean and DSJ Tax have repeatedly and continually engaged in conduct that substantially interferes with the proper enforcement and administration of the internal revenue laws and that injunctive relief is appropriate under 26 U.S.C. § 7402(a) to prevent recurrence of that conduct;

D. That the Court enter a permanent injunction prohibiting Saint-Jean and DSJ Tax and any other persons working in concert or participation with them from directly or indirectly:

    1. Preparing, assisting in the preparation of, or directing the preparation of federal returns, amended returns, or other tax-related documents or forms,

including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

2. Using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN or EFIN;

3. Owning, managing, working for, profiting from, or volunteering for any individual, business, or entity engaged in tax return preparation;

4. Transferring, selling, or assigning their customer lists and/or other customer information;

5. Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and/or 6701;

6. Engaging in conduct that substantially interferes with the proper administration and enforcement of the tax laws.

E. That the Court enter an injunction requiring Saint-Jean and DSJ Tax, at their own expense:

1. To send by certified mail, return receipt requested, a copy of the final injunction entered against Saint-Jean and DSJ Tax in this action, as well as a copy of the Complaint setting forth the allegations as to how Saint-Jean and DSJ Tax fraudulently prepared federal income tax returns, to each person for whom Saint-Jean and DSJ Tax prepared federal income tax returns or any other federal tax forms after January 1, 2015;

2. To surrender to the Secretary of the Treasury or his delegate any and all PTINs held by, assigned to, or used by Saint-Jean and DSJ Tax pursuant to 26

U.S.C. § 6109, and the EFINs held by, assigned to, or used by Saint-Jean and DSJ Tax;

3. To prominently post a copy of the injunction on any website Defendants maintain and in Saint-Jean and DSJ Tax's place of business where tax returns were prepared by Saint-Jean and DSJ Tax;

4. To deliver a copy of the injunction to Saint-Jean and DSJ Tax's employees, contractors, and vendors;

5. To file sworn statement with the Court evidencing their compliance with the foregoing directives within forty-five (45) days of entry of the final injunction in this action; and

6. To keep records of Saint-Jean and DSJ Tax's compliance with the foregoing directives, which may be produced to the Court, if requested or the United States pursuant to paragraph F, *infra*;

F. That the Court enter an order allowing the United States to monitor Defendants' compliance with the injunction and to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure; and

G. That the Court grant the United States such other and further relief as the Court deems appropriate.

Dated: January 15, 2019               Respectfully submitted,

                                         RICHARD E. ZUCKERMAN
                                         Principal Deputy Assistant Attorney General

By:    /s/ Joanna L. Barry
        JOANNA L. BARRY
        Trial Attorney, Tax Division
        Department of Justice
        P.O. Box 14198
        Washington, DC 20044
        Telephone: (202) 353-7205
        Fax: (202) 514-9868
        joanna.l.barry@usdoj.gov

        Of Counsel:
        Benjamin G. Greenberg
        United States Attorney

17240527.4